IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RONALD E. COHEN, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:15-CV-1837-L** |
| | § | |
| **SENECA INSURANCE CO., INC.,** | § | |
| **J.S. HELD, INC., HAAG ENGINEERING** | § | |
| **CO., and R. KEAN JENNER,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Motion to Remand and for Attorney's Fees, filed June 25, 2015 (Doc. 4). After considering the motion, briefing, record, and applicable law, the court **grants** Plaintiffs' Motion to Remand and **denies** Plaintiffs' request for attorney's fees.

**I.   Background**

This lawsuit arises out of an insurer's alleged failure to properly adjust and pay all appropriate amounts for storm damage to Plaintiffs' commercial structures under an insurance policy. Plaintiffs are the owners of two commercial properties (collectively, the "Properties"), one located at 2021 North Town East Boulevard in Mesquite, Texas (the "Town East Property"), and the other located at 4901 Ross Avenue, Dallas, Texas (the "Ross Avenue Property"). Pls.' Sec. Am. Orig. Pet. ¶ 13, attached as Ex. 5 to Defs.' Not. of Removal (Doc. 1-5).[1]

---

[1] Although the court allowed amendment of the pleadings, in deciding whether removal was proper in the first instance, the court considers the allegations in the pleadings at the time the notice of removal is filed, which in this case is Plaintiffs' Second Amended Original Petition. *See Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990) ("When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint *at the time the [notice of] removal is*

**Memorandum Opinion and Order - Page 1**

Plaintiffs purchased insurance policies from Defendant Seneca Insurance Company, Inc. ("Seneca"), effective December 1, 2011 to December 1, 2013 (the "Policies"), to insure the Properties. *Id.* ¶ 14. Severe wind and hail damaged the Town East Property on April 3, 2012, and damaged the Ross Avenue Property on March 9, 2013 (collectively, the "Losses"). *Id.* Plaintiffs notified Seneca of the Losses in compliance with the terms of the Policies and fully complied with all conditions precedent for recovery under the Policies as a result of the Losses. *Id.* Seneca hired Defendants J.S. Held, Inc. ("J.S. Held") and Haag Engineering Company ("Haag") as "insurance adjusters and consultants" to "measure, document, estimate, and adjust the damage to the roofs of the Properties." *Id.* ¶ 15. Haag, in turn, had its employee, Defendant R. Kean Jenner ("Jenner"), visit the Properties to "measure, document, and adjust the claim." *Id.* Jenner traveled to the Properties but failed and refused to conduct a thorough investigation. *Id.* ¶ 16. At the Ross Avenue Property, Jenner found a "large number of small bare spots" on the roof, and attributed them to the "caustic effects of pigeon droppings." *Id.* At the Town East Property, Jenner found "a large number of circular chips" and attributed them to hail events that occurred "a long time ago." *Id.* In making this determination, Jenner noted a "modest number of bruises" in the roof membrane. *Id.* Defendant Haag had inspected the same roof in 2011 and found "no evidence of any hailfall, old or new, with hailstones sufficient to bruise" the roofing material. *Id.*

Plaintiffs allege that, following Jenner's findings, J.S. Held, Haag, and Jenner, jointly and severally, "made a coverage determination that the hail damage was not covered and failed and refused to provide coverage for the Plaintiffs' Loss." *Id.* ¶ 17. Plaintiffs further allege that "Defendants' failure to provide coverage under the terms of the policies in question is a breach of

---

*filed*.") (emphasis added).

**Memorandum Opinion and Order - Page 2**

the policies, and violates the Texas Insurance Code and the Unfair Claims Settlement Practices Act." *Id.*

On February 19, 2015, Plaintiffs filed their Original Petition in County Court at Law No. 1, Dallas County, Texas. On April 21, 2015, Plaintiffs filed their First Amended Original Petition, which was mistakenly labeled as their Second Amended Original Petition. *See* Pls.' Sec. Am. Orig. Pet., attached as Ex. 5 to Defs.' Not. of Removal (Doc. 1-5). For purposes of consistency, the court will continue to refer to the pleading at the time of removal as Plaintiffs' Second Amended Original Petition.

Plaintiff Ronald Cohen ("Cohen") is a Texas citizen.[2] Plaintiffs Morben Realty Company, Inc. and Ronco Realty are both incorporated under the laws of Texas with principal places of business in Dallas County, Texas, and are, therefore, Texas citizens for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1). Plaintiff Matco is alleged, on information and belief, to be a citizen of Texas.

Defendant Seneca is incorporated under the laws of New York with its principal place of business in New York, New York, and is, therefore, a citizen of New York. Defendant J.S. Held is incorporated under the laws of Texas with its principal place of business in Dallas, Texas, and is, therefore, a citizen of Texas. Defendant Haag is incorporated under the laws of Texas with its

---

[2] In Plaintiffs' Second Amended Original Petition, Plaintiffs make certain allegations pertaining to the citizenship of the parties "on information and belief." In addition, Plaintiffs allege that Cohen is a "resident" of Texas, when the proper inquiry with respect to an individual is his "citizenship." *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (citation and quotation marks omitted). Nonetheless, the court concludes that the citizenship allegations in Plaintiffs' Second Amended Original Complaint (*see* ¶¶ 2-5), considered in tandem with statements in Defendants' Notice of Removal (*see* ¶¶ 2-5), are sufficient to establish that, for purposes of 28 U.S.C. § 1332, Plaintiffs are all citizens of Texas.

**Memorandum Opinion and Order - Page 3**

principal place of business in Dallas, Texas, and is, therefore, a citizen of Texas. Defendant Jenner is a citizen of Texas.

Plaintiffs assert that Seneca has not performed its contractual duties under the Policies and failed to settle their claims in a fair manner. Plaintiffs also contend that Defendants' failure to properly adjust and inspect, and later fully compensate them, constitute violations of the Texas Insurance Code. Plaintiffs allege causes of action for breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, violations of Section 17.50(a)(4) of the Texas Business and Commerce Code ("DTPA"), common law bad faith, tortious interference, conspiracy, fraudulent misrepresentation, fraudulent inducement, and breach of fiduciary duty.

On May 27, 2015, Defendants removed the case to this court, contending that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of costs and interest. Defendants contend that Haag, J.S. Held, and Jenner, all nondiverse parties, were improperly joined to defeat diversity jurisdiction, and, therefore, urge the court to disregard their citizenship. On June 25, 2015, Plaintiffs moved to remand the case to County Court at Law No. 1, Dallas County, Texas, arguing that the nondiverse Defendants were properly joined in this lawsuit, thereby requiring remand. The motion has been fully briefed and is ripe for adjudication.

## II. Applicable Legal Standards

### A. Removal Jurisdiction

Federal courts are courts of limited jurisdiction and possess only that power authorized by the United States Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Unless Congress expressly provides otherwise, a defendant may

remove a state court civil action to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over civil actions in which there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The statute requires complete diversity of citizenship; that is, a district court cannot exercise subject matter jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). The citizenship of a party that is improperly joined must be disregarded in determining whether diversity of citizenship exists. *Johnson v. Heublein*, 227 F.3d 236, 240 (5th Cir. 2000).

### B. Improper Joinder

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id*. at 571 n.1. Accordingly, the court uses the term "improper joinder" in this opinion. As the party wishing to invoke federal jurisdiction by alleging improper joinder, Defendants have the burden to establish that the Texas Defendants were joined by Plaintiffs to defeat federal jurisdiction. *Id*. at 575. The court is to resolve "any doubt as to the propriety of removal" in favor

of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citation and quotation marks omitted).

To establish improper joinder, Defendants must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Defendants do not assert fraud on the part of Plaintiffs, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must be reasonable, not merely theoretical." *Id*. If there is a reasonable possibility that a plaintiff can recover on any of his or her claims, there is no improper joinder, and the case must be remanded. *Smallwood*, 385 F.3d at 575. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir.

**Memorandum Opinion and Order - Page 6**

1992) (citations omitted). To determine whether a party was improperly joined, the court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). On the other hand, if there is no reasonable possibility for predicting liability against the nondiverse defendant, improper joinder exists, and the action remains in federal court.

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the [notice of] removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990). A court may not look to postremoval filings or pleadings to determine the issue of improper joinder. *Griggs v. State Farm Lloyds*, 181 F.3d at 700 (citation omitted). Limiting the determination of questions regarding removal jurisdiction to the claims set forth in the state pleadings at the time of removal ensures finality and early resolution of the jurisdictional issue, both of which reduce expense and delay to the parties and court. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

### C. The Applicable Pleading Standard

In *International Energy Ventures Management, L.L.C. v. United Energy Group, Limited*, the Fifth Circuit addressed whether state or federal pleadings standards apply to the issue of improper

**Memorandum Opinion and Order - Page 7**

joinder, holding that a federal court must apply the federal pleading standard. 818 F.3d 193, 208 (5th Cir. 2016). The federal pleading standard requires a plaintiff's pleading to contain sufficient facts to state a claim to relief that is plausible on its face, providing more than a mere possibility of recovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Moreover, the pleading must provide more than "labels and conclusions" and do more than merely restate the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.   Analysis

#### A.   Allegations Against Jenner for Violating the Texas Insurance Code

The sole issue before this court is whether Defendant Jenner was properly joined in this action.[3] Defendants contend that Plaintiffs fail to state a claim against Jenner under Texas law. Plaintiffs counter that Jenner can be held liable under the Texas Insurance Code, among other causes of action, for his conduct in adjusting the claim, and that the allegations in the Second Amended Original Petition are sufficient to state a claim against him. If so, Jenner was properly joined, and this court must grant Plaintiffs' Motion to Remand for lack of diversity jurisdiction. If the court finds a reasonable basis to predict that Plaintiffs can potentially recover on one of the causes of action asserted against Jenner, the court must remand the entire case. *See Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 (5th Cir. 2004) ("Although our fraudulent joinder decisions have never made the issue entirely pellucid, § 1441's holistic approach mandates

---

[3] Although Defendants J.S. Held and Haag are also Texas citizens, the court will limit its analysis to Defendant Jenner, as the presence of one nondiverse defendant is sufficient to destroy complete diversity and require remand. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted).

that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court.").

The Texas Legislature enacted Chapter 541 of the Texas Insurance Code "to regulate trade practices in the business of insurance" by prohibiting "unfair methods of competition or unfair or deceptive acts or practices." Tex. Ins. Code § 541.001. In Texas, a "person may not engage . . . in a trade practice that is defined in [Chapter 541] as or determined under [Chapter 541] to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." *Id.* § 541.003. The Texas Insurance Code permits any person "who sustains actual damages" to bring an action "against another person for those damages caused by the other person engaging in . . . an unfair or deceptive act or practice in the business of insurance." *Id.* § 541.151. Subchapter B defines "unfair methods of competition and unfair or deceptive acts or practices." *See id.* §§ 541.051–.061. An "unfair or deceptive act or practice in the business of insurance" includes engaging in "unfair settlement practices with respect to a claim by an insured that include:

> (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
>
> (2) failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of:
>
>> (A) a claim with respect to which the insurer's liability has become clear; or
>
> . . . .
>
> (3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim.

*Id.* § 541.060(a).

A "person" for purpose of Chapter 541 is "an individual, corporation, association, partnership, . . . or other legal entity engaged in the business of insurance, including an agent, broker,

**Memorandum Opinion and Order - Page 9**

adjuster, or life and health insurance counselor." *Id.* § 541.002(2). Accordingly, for Jenner to qualify as a "person" and be subject to suit under Chapter 541 of the Texas Insurance Code, Jenner must be "engaged in the business of insurance." *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 486 (Tex. 1998). Under Texas law, the "adjustment of claims and losses" qualifies as "the business of insurance," thus making an "adjuster" a "person" under the Insurance Code. *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988); *see also Gasch v. Hartford Indem. Co.*, 491 F.3d 278, 282 (5th Cir. 2007) (An insurance adjuster who services a policy engages in the business of insurance and, therefore, could be held individually liable under the Texas Insurance Code.).

Having concluded that Jenner can be held liable under the Texas Insurance Code, in ruling on the subject motion, the court now asks whether, applying the federal pleading standard, there is a reasonable basis to predict that Plaintiffs state a viable claim and might be able to recover under state law against Jenner. *See Smallwood*, 385 F.3d at 573; *see also Dodson.*, 951 F.2d at 42 (In making a determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so.") (citations omitted).

Plaintiffs allege that Seneca hired Haag (and its employee Jenner) to "measure, document, and adjust the claim." Pls.' Sec. Am. Orig. Pet. ¶ 15. Plaintiffs allege that Jenner traveled to the Properties but failed and refused to conduct a thorough investigation. *Id.* ¶ 16. At the Ross Avenue Property, Jenner found a "large number of small bare spots" on the roof, but attributed them to the "caustic effects of pigeon droppings." *Id.* At the Town East Property, Jenner found "a large number of circular chips" and attributed them to hail events that occurred "a long time ago." *Id.* In making

this determination, Jenner noted a "modest number of bruises" in the roof membrane. *Id.* Plaintiffs allege that Defendant Haag inspected the same roof in 2011 and found "no evidence of any hailfall, old or new, with hailstones sufficient to bruise" the roofing material. *Id.* Plaintiffs further allege that, following Jenner's findings, J.S. Held, Haag, and Jenner, jointly and severally, "made a coverage determination that the hail damage was not covered and failed and refused to provide coverage for the Plaintiffs' Loss." *Id.* ¶ 17. Plaintiffs further allege that "Defendants' failure to provide coverage under the terms of the policies in question is a breach of the policies, and violates the Texas Insurance Code and the Unfair Claims Settlement Practices Act." *Id.*

The Texas Supreme Court has "specifically held that '[t]he business of insurance includes the investigation and adjustment of claims and losses.'" *Roach v. Allstate Vehicle & Prop. Ins. Co.*, 2016 WL 795967, at *4 (N.D. Tex. Feb. 29, 2016) (Fish, J.) (citation omitted).; *see also Gasch.*, 491 F.3d at 282 (collecting cases holding that an insurance adjuster is subject to individual liability under Texas Insurance Code). Plaintiffs have adequately alleged that Jenner was an "adjuster" engaged in the "business of insurance," and, therefore, a "person" under the Texas Insurance Code. Tex. Ins. Code § 541.002; *Gasch*, 481 F.3d at 282. In addition, Plaintiffs allege that Jenner failed to conduct a proper investigation and improperly adjusted Plaintiffs' claim, misrepresenting facts concerning the condition of the Properties' roofs, which are facts related to damages and coverage. The court concludes these allegations are sufficient enough to state a plausible claim for relief against Jenner under the Texas Insurance Code. The court, therefore, concludes that Jenner was properly joined as a defendant in this lawsuit.[4]

---

[4] Numerous other courts have reached the same conclusion and granted motions to remand in cases with similar factual allegations brought by a consumer against an insurance adjuster or adjusting company for violating § 541 of the Texas Insurance Code, including allegations of, among other things, substandard

**Memorandum Opinion and Order - Page 11**

Plaintiffs have stated a plausible claim for relief for violations of the Texas Insurance Code against Jenner. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662 at 678. Defendants have failed to meet their burden of establishing that there is no reasonable basis for the court to predict Plaintiffs' potential ability to recover against Jenner.[5] Having found Plaintiffs can potentially recover against Jenner for violations of the Texas Insurance Code, the court concludes he was not improperly joined. Jenner's status as a Texas resident for purposes of 28 U.S.C. § 1332 destroys diversity jurisdiction and, therefore, requires this court to remand the action. *See* 28 U.S.C. §1447(c).

### B.     Plaintiffs' Request for Costs and Attorney's Fees

Plaintiffs seek attorney's fees and costs incurred for obtaining a remand of this action to state court pursuant to 28 U.S.C. § 1447(c). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a

---

investigation and inspection, outcome-oriented investigations, and misrepresentations about the cause and scope of the loss leading to improper denial of coverage or unfair settlement practices. *See, e.g., Roach v. Allstate Vehicle & Prop. Ins. Co.*, 2016 WL 795967, at *4 (N.D. Tex. Feb. 29, 2016) (Fish, J.); *Esteban v. State Farm Lloyds*, 23 F. Supp. 3d 723, 732-33 (N.D. Tex. 2014) (Boyle, J.); *Western States Asset Mgmt., Inc. v. AIX Specialty Insur. Co.*, 2013 WL 3349514, at *4 (N.D. Tex. July 3, 2013)(Lynn, J.). While these cases were decided under Texas's "fair notice" pleading standard, the court finds their reasoning persuasive, and concludes that, in this case, Plaintiffs' pleadings are adequate even under the federal pleading standard.

[5] Defendants, in opposition to the motion to remand, cite to a declaration filed by Jenner in which he states he acted as an engineer and not as an adjuster. This declaration, alone, is insufficient to trigger a summary-judgment type analysis of the pleadings. While Defendants attach the declaration to their opposition brief and refer to it, they fail to make *any* argument in their briefing why this case is one of the limited instances in which the district court should "pierce the pleading and conduct a summary inquiry." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Absent any legal argument, the court declines to deviate from the Rule 12(b)(6)-type analysis to determine the propriety of removal. Further, Defendants' reliance on the court's prior decision in *Craig Penfold Properties Inc. v. The Travelers Casualty Insurance Company*, 2014 WL 4055356 (N.D. Tex. Aug. 14, 2014) (Lindsay, J.), is misplaced, as, in that case, the court concluded that piercing the pleadings was warranted.

result of the removal." 28 U.S.C. § 1447(c). There is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). Bad faith is not "a prerequisite to awarding attorney fees and costs." *Id.* (citation omitted). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted). In this regard, the court must decide "whether the defendant had objectively reasonable grounds to believe the removal was legally proper" at the time of removal, "irrespective of the fact that it might ultimately be determined that removal was improper." *Valdes*, 199 F.3d at 293.

The court determines that an award of fees is not warranted. This is not an instance where the court can conclude that Defendants lacked objectively reasonable grounds to believe that removal was legally proper. This is so because whether sufficient facts have been alleged for the district court to predict that a plaintiff might be able to recover against an in-state defendant is often a close call. This is one of those cases, and the court cannot say that Defendants lacked objectively reasonable grounds to remove. Plaintiffs have not persuaded the court that attorney's fees and costs are merited under applicable law. Accordingly, the court will deny Plaintiffs' request for costs and attorney's fees.

## IV.   Conclusion

Because Defendant Jenner was not improperly joined, his citizenship destroys diversity jurisdiction and, therefore, the court must remand this action. *See* 28 U.S.C. § 1447(c). For the reasons herein stated, the **grants** Plaintiffs' Motion to Remand (Doc. 4), **denies** Plaintiffs' request

for attorney's fees and costs, and **denies as moot** all remaining motions. Pursuant to 28 U.S.C. § 1447(c), the court **remands** this action to the County Court at Law No. 1, Dallas County, Texas, from which it was removed. The clerk of the court is **directed** to effect the remand in accordance with the usual procedure.

    **It is so ordered** this 24th day of March, 2017.

                                   Sam A. Lindsay
                                   United States District Judge